**HUNTON ANDREWS KURTH LLP**
Michele J. Beilke (State Bar No. 194098)
mbeilke@HuntonAK.com
Julia Y. Trankiem (State Bar No. 228666)
jtrankiem@HuntonAK.com
JeeHyun Yoon (State Bar No. 279194)
jyoon@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: 213 • 532 • 2000
Facsimile: 213 • 532 • 2020

Attorneys for Defendants
ABBOTT VASCULAR INC. and ABBOTT LABORATORIES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| KAREN ELIZABETH GORDON, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>    v.<br><br>ABBOTT VASCULAR INC.; ABBOTT LABORATORIES; AXELON SERVICES CORPORATION; and DOES 1 through 20, inclusive,<br><br>         Defendant. | CASE NO.:  2:22-cv-5739<br><br>[Removed from Riverside County Superior Court, Case No. CVRI2202637]<br><br>**DEFENDANT ABBOTT VASCULAR INC.'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**<br><br>[*Filed concurrently with Civil Cover Sheet; Declarations of Neal Cordell and JeeHyun Yoon; Corporate Disclosure Statement; Certification and Notice of Interested Parties; and Certificate of Service*]<br><br>Complaint Filed:    June 27, 2022 |

*(margin text, left side)* **Hunton Andrews Kurth LLP** 550 South Hope Street, Suite 2000 Los Angeles, California 90071-2627

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act of 2005 ["CAFA"]), 1441, 1446, and 1453, Defendant Abbott Vascular Inc. ("Defendant") hereby removes the action filed by Plaintiff Karen Elizabeth Gordon ("Plaintiff") in the Superior Court of California, County of Riverside, and captioned Case No. CVRI2202637, to the United States District Court for the Central District of California – Eastern Division.  In support thereof, Defendant states as follows:

## I.    BACKGROUND

1.    This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of cases. 28 U.S.C. § 1453.

2.    On June 27, 2022, Plaintiff, purportedly on behalf of herself and all others similarly situated, filed a class action complaint, which is currently pending in the Superior Court of the State of California, County of Riverside, Case No. CVRI2202637, *Karen Elizabeth Gordon v. Abbott Vascular Inc., et al.* (the "State Court Action").

3.    Plaintiff's Complaint alleges eight (8) claims for relief on behalf of herself and a purported class of similarly situated individuals: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Pay Wages Timely During Employment; (7) Failure to Pay All Wages Due Upon Separation of Employment; and (8) Violation of Business and Professions Code §§ *et seq.*  The named Defendants are Abbott Vascular Inc., Abbott Laboratories, and Axelon Services Corporation.

4.    According to the Complaint, Plaintiff defines the proposed class she seeks to represent as follows: "All California citizens currently or formerly employed by

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

2

Defendants as non-exempt employees in the State of California at any time between December 7, 2017 and the date of class certification ("Class")."  Ex. A, Complaint, ¶ 20.

5.    On July 14, 2022, the registered agent for service of process for Defendant Abbott Vascular Inc. received a copy of the Summons, Complaint, Certificate of Counsel, Notice of Department Assignment, Civil Case Cover Sheet, Notice of Case Management Conference, and Plaintiff's Peremptory Challenge to Judicial Officer. True and correct copies of these documents are collectively attached hereto as **Exhibit A**.

6.    On July 8, 2022, the Court generated a Notice of Case Reassignment to Department, which Plaintiff included in her Notice of Ruling re: Reassignment filed on July 26, 2018.  True and correct copies of these documents are collectively attached hereto as **Exhibit B**.

7.    On July 12, 2022, the Court generated a Minute Order continuing the Case Management Conference and Clerk's Certificate of Mailing of same.  True and correct copies of these documents are attached hereto as **Exhibit C**.

8.    On July 18, 2022, Plaintiff filed Proofs of Service regarding Plaintiff's service of Complaint on Defendants Abbott Vascular Inc., Abbott Laboratories, and Axelon Services Corporation.  True and correct copies of these Proofs of Service are collectively attached hereto as **Exhibit D**.

9.    On July 26, 2022, the Court generated a Notice of Document Quality Assurance regarding Plaintiff's Proof of Service for Axelon Services.  A true and correct copy of this Notice is attached hereto as **Exhibit E**.

10.    On August 11, 2022, Defendants Abbott Vascular Inc. and Abbott Laboratories filed their Answer.  A true and correct copy of this Answer is attached hereto as **Exhibit F**.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF REMOVAL

11.    Also on August 11, 2022, Defendants Abbott Vascular Inc. and Abbott Laboratories filed a Motion for Peremptory Challenge.  A true and correct copy of this Motion is attached hereto as **Exhibit G**.

12.    On August 11, 2022, Defendant Axelon Services Corporation filed its Answer.  A true and correct copy of this Answer is attached hereto as **Exhibit H**.

13.    The above-referenced documents attached hereto as Exhibits A through H constitute all pleadings and process filed in the Riverside County Superior Court as of the date of this Notice of Removal.  No other process, pleadings, or orders have been filed, served, or received by Defendant Abbott Vascular Inc. in this action.

## II.    TIMELINESS AND NOTICE

14.    The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-348 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

15.    This Notice of Removal is timely because it is filed within 30 days of service of the Complaint on Defendant Abbott Vascular Inc. on July 14, 2022. 28 U.S.C. §§ 1446(b).

16.    As required by 28 U.S.C. § 1446(d), Defendant Abbott Vascular Inc. will promptly provide written notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of California, County of Riverside.  This Notice of Removal is concurrently being served on all parties.

/ / /

/ / /

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF REMOVAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## III.   JURISDICTION AND VENUE

17.    Removal is proper under 28 U.S.C. §§ 1441 and 1446 because – as explained below – the above-captioned action is a civil action that satisfies the requirements of CAFA, codified in part in 28 U.S.C. § 1332(d).

18.    This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending. Specifically, the United States District Court for the Central District of California – Eastern Division embraces Riverside County. Thus, this Court is the district court to which this case is properly removed. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

## IV.   JURISDICTION BASED ON THE CLASS ACTION FAIRNESS ACT

19.    This Court has original jurisdiction of this action under CAFA because it is a purported class action with an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, with at least one putative class member and at least one defendant being citizens of different states, and having at least 100 putative class members.  28 U.S.C. §§ 1332(d)(2),(5).

20.    Under CAFA, all defendants need not consent to removal.  28 U.S.C. § 1453(b); *United Steel, et al. v. Shell Oil Co.*, 549 F.3d 1204, 1208-1209 (9th Cir. 2008) (other defendants cannot prevent or defeat removal of action).  Further, defendants who are not properly served with the summons and complaint are not required to consent to removal by another defendant.  28 U.S.C.A. § 1446(b).

### A.    At Least One Plaintiff Class Member is Diverse from At Least One Defendant.

21.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction.  Minimal diversity of citizenship exists when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

5

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

i. *Plaintiff is a Citizen of California*.

22.     For the purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled.  *See Kantor v. Wellesley Galleries, Ltd.,* 704 F. 2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must . . . be domiciled in the state").  Evidence of continuing residence creates a presumption of domicile.  *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *Mitchell v. United States*, 88 U.S. 350, 353 (1874) ("A domicile once acquired is presumed to continue until it is shown to have been changed").  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Lew v. Moss*, 797 F. 2d 747, 749-50 (9th Cir. 1986).

23.     Plaintiff is a citizen of the State of California, because her Complaint alleges she is a resident of California.  Ex. A, Complaint, ¶ 10.

24.     Plaintiff also seeks to represent "[a]ll California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between December 7, 2017 and the date of class certification ("Class")."  Ex. A, Complaint, ¶ 20.  Thus, by Plaintiff's own allegation, the putative class members are also California citizens.

25.     Under CAFA, Defendant need only establish that ***any*** class member (named or not) is a citizen of a different state than any defendant.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).  Here, however, Plaintiff and the members of the putative class are and, at all relevant times for the purposes of this removal, have been, California citizens.  Further, all three defendants are diverse from Plaintiff, as discussed below.

ii. *Abbott Vascular Inc. is a Citizen of Delaware and Illinois.*

26.     Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The United States Supreme Court has concluded that a

DEFENDANT'S NOTICE OF REMOVAL

corporation's "principal place of business" is "where a corporation's officers direct, control and coordinate the corporation's activities," which the Court referred to as its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters." *Id*.

27.    At the time the State Court Action commenced, as well as of the date of filing this Notice, Abbott Vascular Inc. was and still is incorporated under the laws of the State of Delaware.  The Statement of Information filed with the Secretary of State states that Abbott Vascular Inc. is a Delaware corporation with its principal executive office located in Illinois.  *See* Declaration of JeeHyun Yoon ("Yoon Decl."), ¶ 2, Ex. 1.  Thus, for removal purposes, Abbott Vascular Inc. is a citizen of Delaware and Illinois.  In other words, Abbott Vascular Inc. is not now and was not, at the time of the filing of the State Court Action, a citizen and/or resident of the State of California for the purposes of removal.  28 U.S.C. § (c)(1).

### iii.    *Abbott Laboratories is a Citizen of Illinois.*

28.    At the time the State Court Action commenced, as well as of the date of filing this Notice, Abbott Laboratories was and still is incorporated under the laws of the State of Illinois.  The Statement of Information filed with the Secretary of State states that Abbott Laboratories is an Illinois corporation with its principal executive office also located in Illinois.  *See* Yoon Decl., ¶ 3, Ex. 2.  Thus, for removal purposes, Abbott Laboratories is a citizen of Illinois.  In other words, Abbott Laboratories is not now and was not, at the time of the filing of the State Court Action, a citizen and/or resident of the State of California for the purposes of removal.  28 U.S.C. § (c)(1).

### iv.    *Axelon Services Corporation is a Citizen of New York*.

29.    At the time the State Court Action commenced, as well as of the date of filing this Notice, Axelon was and still is incorporated under the laws of the State of New York.  The Statement of Information filed with the Secretary of State states that

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

7

Axelon is a New York corporation, with its principal executive office also located in New York. *See* Yoon Decl., ¶ 4, Ex. 3. Thus, for removal purposes, Axelon is a citizen of New York. In other words, Axelon is not now and was not, at the time of the filing of the State Court Action, a citizen and/or resident of the State of California for the purposes of removal. 28 U.S.C. § (c)(1).

30. Although Plaintiff has also named fictitious defendants "DOES 1 through 20" (*see* Complaint), 28 U.S.C. § 1441(a) provides "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." *See, e.g., Soliman v. Philip Morris Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002); *Fristoe v. Reynolds Metals Co.*, 615 F. 2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of "Doe" defendants does not deprive this Court of jurisdiction.

31. In summary, at least one member of the putative class is a citizen of a state different from that of at least one defendant, and the requirements for minimal diversity are met under 28 U.S.C. § 1332(d)(2)(A).

## B.    The Putative Class Exceeds 100 Members.

32. CAFA requires that the aggregated number of members of all proposed classes in the complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

33. Plaintiff's Complaint defines the putative class as "[a]ll California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between December 7, 2017[1] and the date of class certification..." Ex. A, Complaint, ¶ 20. There are three defendants in the action: Abbott Vascular Inc., Abbott Laboratories, and Axelon. *See* Ex. A, Complaint.

---

[1]    Plaintiff's Complaint alleges that the statute of limitations for this matter was tolled between April 6, 2020 and October 1, 2020, pursuant to California Rules of Court, Appendix I, Emergency Rule No. 9. Ex. A, Complaint, ¶ 20, fn.1. Accordingly, this Notice of Removal takes into account this tolling period when calculating the four-year and three-year statute of limitations discussed herein.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF REMOVAL

34.    Between December 2017 and the present, Abbott Vascular Inc. employed at least 100 California-based individuals who were hourly-paid/non-exempt employees. Declaration of Neal Cordell ("Cordell Decl."), ¶¶ 5(A).  Accordingly, CAFA's class size requirement is met.

### C.    The Amount in Controversy Exceeds $5 Million.

35.    CAFA requires that the amount in controversy exceed $5,000,000 exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).

36.    "'No antiremoval presumption attends cases invoking CAFA….'" *Long v. Destination Maternity Corp.*, No. 15cv2836-WQH-RBB, 2016 WL 1604968, at *4 (S.D. Cal. Apr. 21, 2016) (quoting S. Rep. No. 109-14, p. 43 (2005)).  Further, "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F. 3d 1193, 1197 (9th Cir. 2015) (also quoted in *Long*, 2016 WL 1604968 at *4).

37.    "'The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.'" *See* Opinion (for publication), *Arias v. Residence Inn by Marriott*, 19-55803, at *5, 10 (9th Cir. Sept. 3, 2019), ECF No. 22 (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F. 3d 395, 400 (9th Cir. 2010)).  "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 19-55803, at *14 (citing *Chavez v. JPMorgan Chase & Co.*, 888 F. 3d 413, 417 (9th Cir. 2018)).

38.    Moreover, when the Complaint fails to allege or limit the frequency of the alleged violations, a removing defendant is entitled to assume ***up to a 100% violation rate – the maximum plausible amount in controversy***. *See, e.g., Lewis*, 627 F. 3d at 401 (holding removing defendant entitled to assume "[t]he amount in controversy… comprises the total billings" of unauthorized charges for premium services never

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

9

ordered, as claimed in consumer class action, because "[p]laintiff's motion to remand proffered no evidence or new allegation that the amount the class might be entitled to receive was less than Verizon's total… billings"); *Patel v. Nike Retail Servs.*, 58 F. Supp. 3d 1032, 1040-42 (N.D. Cal. 2014) (finding a plaintiff cannot "have… [her] cake and eat it too" by resting on vague allegations and faulting the removing defendant "for failing to prove what [p]laintiff means… and… the truth of [her] allegations"); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding "assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (concluding "Aerotek could have logically assumed a 100 percent violation rate because Plaintiff does not qualify her allegations").

39. "Defendant is not required to produce business records 'setting forth the precise number of employees in the putative class… and the precise calculation of the damages alleged' to meet its burden regarding the amount in controversy." *Long*, 2016 WL 1604968 at *6 (quoting *Tajonar v. Echosphere, L.L.C*, No. 14CV2732-LAB (RBB), 2015 WL 4064642, at *3 (S.D. Cal. Jul. 2, 2015)); *see also Valdez v. Allstate Ins. Co.*, 372 F. 3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

40. "'There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages…at this premature (pre-certification) state of the litigation.'" *Bryant*, 284 F. Supp. 3d at 1150-51.

41. "[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Arias*, 19-55803, at *14-15 (quoting *Ibarra*, 775 F. 3d at 1199).

10

42.     Here, based on the allegations of Plaintiff's Complaint, the amount in controversy for those claims that are determinable by a preponderance of the evidence exceeds $5,000,000.[2]  As detailed below, a conservative estimate of the amount in controversy under Plaintiff's claims for unpaid overtime, unpaid meal period premiums, unpaid rest period premiums, final wages not timely paid, and non-compliant wage statements amounts to **$19,049,589.87**.[3]

### i. *Failure to Pay Overtime Wages*

43.     Plaintiff alleges that Defendants "engaged in a systematic pattern of wage and hour violations," such as failing to pay overtime wages.  Ex. A, Complaint, ¶¶ 3-4. Specifically, Plaintiff alleges that Defendants required Plaintiff and Class Members to work in excess of eight (8) hours in a day, forty (40) hours in a week, and/or on a seventh consecutive day of work, entitling them to overtime wages, but that Defendants knowingly and willfully refused to compensate Plaintiff and Class Members for all hours worked, including overtime.  Ex. A, Complaint, ¶¶ 50-52.

44.     California Labor Code § 510 provides, in relevant part: "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one

---

[2]     This figure is based solely upon Plaintiff's claims for unpaid overtime, unpaid rest break and meal period premiums, final wages not timely paid, and noncompliant wage statements. Plaintiff's damages under her claims for failure to pay minimum wages and violation of the UCL were not specifically pled and are not quantifiable at this time. Furthermore, Plaintiff's sixth cause of action for failure to pay timely wages during employment will also not be analyzed in this Notice, as Section 204 "does not grant employees a private right of action against employers who violate section 204." *Young v. ABM Sec. Servs.*, 905 F.2d 1541, 1990 WL 89347, at *5 (9th Cir. 1990) (unpublished); *see also Silva v. AvalonBay Cmtys., Inc.*, No. CV 15-4157 JAK (PLAx), 2015 WL 11422302 , at *9 (C.D. Cal. Oct. 8, 2015) ("[T]here is no private right of action under this statute").

[3]     This Notice does not concede and should not be construed as evidence that Defendants violated the legal rights of Plaintiff or any members of the putative class members. The arguments and the calculations of potential damages presented here are based on the allegations in the Complaint and solely for purposes of this Notice of Removal.

DEFENDANT'S NOTICE OF REMOVAL

1    workweek shall be compensated at the rate of no less than one and one-half times the

2    regular rate of pay for an employee."  Labor Code § 510 further provides, in relevant

3    part: "Any work in excess of 12 hours in one day shall be compensated at the rate of no

4    less than twice the regular rate of pay for an employee….[and] any work in excess of

5    eight hours on any seventh day of a workweek shall be compensated at the rate of no

6    less than twice the regular rate of pay of an employee."

7        45.    A claim for unpaid overtime under California Labor Code §§ 510 and

8    1194 is governed by the three-year statute of limitations pursuant to Code of Civil

9    Procedure § 338(a).  See *Van v. Language Line Services, Inc*., 2016 WL 3143951, at *7

10   (N.D. Cal. 2016).  However, Plaintiff's Unfair Competition Law claim is premised on

11   her claim of unpaid overtime, extending the statute of limitations to four years.  Ex. A,

12   Complaint, ¶¶ 3-4, 91; Cal. Bus. & Prof. Code § 17208; *Lazaro v. Lomarey Inc.*, 2012

13   WL 566340, at *9 (N.D. Cal. 2012) ("…[S]ince plaintiffs can recover their unpaid

14   overtime wages as restitution under Business & Professions Code §§ 17200 et seq., they

15   get the benefit of its four-year statute of limitations").  Thus, for purposes of

16   determining the amount-in-controversy for removal, Defendant assumes that a four-year

17   statute of limitations applies to this claim.

18       46.    Courts in the Ninth Circuit have routinely accepted estimates based on one

19   to two hours of "unpaid overtime per putative class member per week."  *Long*, 2016

20   WL 1604968, at *7 (citing *Jasso v. Money Mart Exp., Inc.,* 2012 WL 699465, at 5

21   (N.D. Cal. Mar. 1, 2012); *Arreola v. Finish Line*, at *4 (N.D. Cal. Dec. 9, 2014)); *see*

22   *also Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (finding

23   reasonable an assumed violation rate of one hour of overtime per week where the

24   plaintiffs asserted that defendant "sometimes" failed to pay overtime); *Stanley v.*

25   *Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017)

26   (holding violation rate of "two hours of overtime" reasonable where the complaint

27   alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

12

frequency of these violations" and there was "no competing evidence that would suggest lower violation rates"). Accordingly, Defendant believes it is appropriate to base its estimates on one hour of unpaid overtime per class member per week.

47. The putative class members employed by Abbott Vascular Inc. collectively worked 158,389 workweeks between December 7, 2017 and the present, and the average hourly rate was $27.38. Cordell Decl., ¶ 5A-C.

48. If each of the putative class members employed by Abbott Vascular Inc. were not paid for even just one (1) hour of overtime per week, the amount in controversy for the unpaid overtime claim, attributable to just the putative class members employed by Abbott Vascular Inc., would be **$6,505,036.23**.[4]

### ii. *Failure to Provide Meal Periods*

49. Plaintiff alleges that "[d]uring the relevant time period, Plaintiff and Class Members did not receive compliant meal periods for working more than five (5) and ten (10) hours per day because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period." Ex. A, Complaint, ¶ 60.

50. California Labor Code § 512(a) provides:

> An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

---

[4] The amount in controversy for Plaintiff's overtime claim is calculated as follows: 158,389 workweeks x 1 hour of overtime x $27.38 average hourly rate x 1.5 overtime multiplier = $6,505,036.23.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

13

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

51.    California Labor Code § 226.7(c) requires employers to pay an extra hour of pay to employees who are not provided full or timely meal periods.

52.    Section 226.7's provision requiring an employer to pay an employee an "additional hour of pay" at the regular rate of compensation for each workday the meal, rest, or recovery period is not provided, constitutes a "premium wage," governed by the three-year statute of limitations applicable to wage claims. Cal. Code Civ. Proc. § 338(a); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1114 (2007).  Again, Plaintiff alleges an Unfair Competition Law claim premised on her meal period claim, extending the statute of limitations to four years.  Ex. A, Complaint, ¶¶ 3-4, 91; *Marlo v. United Parcel Service, Inc.*, 2009 WL 10669253, at *17 (C.D. Cal. 2019) (holding that the four-year statute of limitations applies to plaintiff's Section 226.7 claim under the UCL).  Thus, for purposes of determining the amount-in-controversy for removal, Defendant assumes that a four-year statute of limitations applies to this claim (as well as Plaintiff's rest break claim as further discussed below).

53.    Plaintiff's Complaint vaguely alleges a "systematic pattern" of wage and hour violations, including failure to provide lawful meal periods or compensation in lieu thereof.  *See* Ex. A, Complaint, ¶¶ 3-4.  Where, as here, a plaintiff alleges a pattern and practice of failing to provide meal periods and offers no further guidance as to the frequency of the alleged violations, a defendant is entitled to assume a 100% violation rate.  *Bryant*, 284 F. Supp. 3d at 1151 (holding where plaintiff did not submit any evidence as to the violation rates, "assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations").

54.    Regardless, Defendant will make the reasonable assumption, solely for the purposes of calculating the amount in controversy, that Plaintiff is claiming that each member of the class was subject to only one meal period violation per week, equivalent

14

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

to a 20% violation rate (one out of five potential meal periods based on a 5-day workweek and 8-hour workday).

55.     During the four-year statutory period (December 7, 2017 to the present), the putative class members employed by Defendant Abbott Vascular Inc. worked approximately 158,389 workweeks and earned an average hourly rate of $27.38. Cordell Decl., ¶¶ 5.A-C.

56.     If each of the putative class members employed by Defendant Abbott Vascular Inc. were not paid one meal period penalty per week at their average hourly rate, the amount in controversy for the meal period claim alone, for this defendant only, would be **$4,336,690.82**.[5]

### iii.   *Failure to Permit Rest Breaks.*

57.     Plaintiff's Complaint alleges that "[d]uring the relevant time period, Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked, including working in excess of ten (10) hours in a day, because they were required to work through their rest periods and/or were not authorized to take their rest periods." Ex. A, Complaint, ¶ 67.

58.     California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not authorized and permitted to take mandated rest periods.  Cal. Lab. Code § 226.7(c).

59.      Plaintiff is silent as to the amount of alleged rest breaks she claims to have been denied, vaguely alleging a "systematic pattern" of wage and hour violations, including a failure to authorize or permit lawful rest breaks or compensation in lieu thereof.  See Ex. A, Complaint, ¶¶ 3-4.  Accordingly, Defendant is entitled to assume a 100% violation rate. *Bryant*, 284 F.Supp. 3d at 1151.

---

[5] The amount in controversy for Plaintiff's meal break claim is calculated as follows: 158,389 workweeks x 1 hour premium pay x $27.38 average hourly rate = $4,336,690.82.

15

60.     Regardless, Defendant will estimate, solely for the purposes of calculating the amount in controversy, that Plaintiff is claiming that each putative class member employed by Abbott Vascular Inc. was subject to only one rest period violation per week, equivalent to a 10% violation rate (one out of 10 potential rest periods based on a 5-day workweek and 8-hour workday).  This is a *conservative* estimate, far below generally permissible assumptions.  *See, e.g.*, *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at \*6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three rest break violations per week reasonable where plaintiff alleged "a policy and practice" of meal and rest break violations); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at \*4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations"); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at \*2 (C.D. Cal. May 14, 2015) (finding defendant's estimate of five meal period and five rest period violations was reasonable); *Bryant*, 284 F.Supp.3d at 1151 (finding a 30% violation rate or three of ten rest periods per workweek, where the complaint alleged that the defendant had a "policy and practice" of rest period violations).

61.     Accordingly, assuming the putative class members employed by Abbott Vascular Inc. seek only one rest period premium per week, the amount of controversy on this claim, limited to just those putative class members employed by Abbott Vascular Inc., would be **$4,336,690.82**.[6]

### *iv.* *Failure to Provide Accurate Itemized Wage Statements*

62.     Plaintiff alleges a claim for failing to provide accurate wage statements under California Labor Code § 226.  Ex. A, Complaint, ¶¶ 71-76.  Specifically, Plaintiff's Complaint alleges that "[d]uring the relevant time period, Defendants have

---

[6] The amount in controversy for Plaintiff's rest break claim is calculated as follows: 158,389 workweeks x 1 hour premium pay x $27.38 average hourly rate = $4,336,690.82.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF REMOVAL

knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members." Ex. A, Complaint, ¶ 73. "These deficiencies include, among other things, the failure to correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiff and Class Members." Ex. A, Complaint, ¶ 73.

63. Labor Code § 226 provides for a minimum $50 penalty for the initial wage statement violation as to each employee, and $100 for each further violation as to each employee, with up to a maximum penalty of $4,000 per employee. Cal. Lab. Code § 226(e). The statute of limitations for recovery of penalties under California Labor Code § 226 is one year. *Clarke v. First Transit, Inc.*, No. CV 07-6476 GAF (MANx), 2010 WL 11459322, at *3 (C.D. Cal. August 11, 2010); Cal. Civ. Proc. Code § 340(a).

64. Plaintiff filed her Complaint on June 27, 2022, thus her claims under California Labor Code § 226 apply only to wage statements provided to her and the other putative class members on or after June 27, 2021. *See Clarke*, 2010 WL 11459322, at *3.

65. There are at least 781 putative class members employed by Abbott Vascular Inc. who fall within the one-year statute of limitations applicable to this cause of action, *i.e.*, June 27, 2021 to the present. Cordell Decl., ¶ 5.D. Of these, 621 putative class members employed by Abbott Vascular Inc. each received 41 or more wage statements during the statutory period, and the remaining 160 putative class members employed by Abbott Vascular Inc. received a total of 4,105 wage statements. Cordell Decl., ¶ 5.D.

/ / /
/ / /
/ / /
/ / /

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF REMOVAL

1    66.    Thus, the amount in controversy for this claim only, limited to those

2    putative class members employed by Defendant Abbott Vascular Inc. only, is

3    **$2,886,500**.[7]

### v.    *Failure to Pay All Wages Due Upon Separation of Employment (Waiting Time Penalties)*

4

5

6    67.    Plaintiff alleges that "[d]uring the relevant time period, Defendants

7    willfully failed to pay the Waiting Time Subclass all their earned wages upon

8    termination, either at the time of discharge or within seventy-two (72) hours of their

9    leaving Defendants' employ."  Ex. A, Complaint, ¶ 84.

10    68.    Labor Code § 203(a) provides that, "if an employer willfully fails to

11    pay...any wages of an employee who is discharged or who quits, the wages of the

12    employee shall continue as a penalty" from the date such wages were due until the date

13    paid.  Labor Code § 203(a) also provides that such wages "shall not continue for more

14    than 30 days."

15    69.    The statute of limitations for claims under California Labor Code § 203 is

16    three years.  *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010) ("section

17    203(b) contains a single, three-year limitations period governing all actions for section

18    203 penalties").  Since Plaintiff filed her Complaint on June 27, 2022, the relevant time

19    period on this claim is December 7, 2018 to the present.

20    70.    At least 156 putative class members employed by Abbott Vascular Inc.

21    had their employment end on or after December 7, 2018, and their average hourly rate

22    during this period was $26.30.  Cordell Decl., ¶ 5.E.  Thus, the amount in controversy

23

24

25 ──────────────────

26    [7]    The amount in controversy for Plaintiff's wage statement claim is calculated as
    follows: [621 (employees who received 41 or more wage statements) x $4,000

27    (maximum penalty)] + [160 (initial violations for remaining employees) x $50.00
    (initial violation penalty)] + [3,945 (subsequent violations for remaining employees) x

28    $100.00 (subsequent violation penalty)] = $2,886,500.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

for this claim only, and for those putative class members employed by Abbott Vascular Inc. only, is **$984,672.00**.[8]

### vi. *Total Amount in Controversy for Five Causes of Action Only, Relating to Putative Class Members Employed by Abbott Vascular Inc. Only*

71.    Based solely on the five causes of action considered above, and taking into consideration the putative class members employed by Abbott Vascular Inc. only, the amount in controversy, conservatively estimated, is **$19,049,589.87**. This showing as to the amount in controversy easily satisfies CAFA's $5,000,000 requirement. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. at 549.

72.    A summary of the amount in controversy established using the most conservative estimates with respect to the five causes of action above is as follows:

| Cause of Action | Amount in Controversy |
| --- | --- |
| *Failure to Pay Overtime* | $6,505,036.23 |
| *Failure to Provide Meal Periods* | $4,336,690.82 |
| *Failure to Permit Rest Breaks* | $4,336,690.82 |
| *Inaccurate Wage Statements* | $2,886,500 |
| *Waiting Time Penalties* | $984,672.00 |
| **TOTAL:** | **$19,049,589.87** |

---

[8] The amount in controversy for Plaintiff's claim for waiting time penalties is calculated as follows: 156 employees x $26.30 hourly rate x 8 hours a day x 30 days = $984,672.00.

19

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

73.     It should be noted that the foregoing estimate of the amount in controversy does not include any attorneys' fees sought by Plaintiff.  When the underlying substantive law provides for an award of attorneys' fees, a party may include that amount in their calculation of the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998).  Plaintiff's Prayer for Relief requests attorneys' fees in this action.  Ex. A, Complaint, Prayer for Relief.

74.     However, since Defendant has exceeded the $5,000,000 CAFA threshold by considering only a portion of Plaintiff's claims and only a fraction of the putative class members, it does not assign in this Notice any specific amount to Plaintiff's request for attorneys' fees.

75.     Should there be any doubt as to whether Defendant has demonstrated the requisite amount in controversy, there are additional putative class members, such as those employed by Abbott Laboratories (*see* Cordell Decl., ¶ 6), which would increase the amount in controversy and should be taken into consideration.  Additionally, Plaintiff's unpaid minimum wage claim would further increase the amount in controversy, as would Plaintiff's request for attorneys' fees.

76.     Because minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

77.     To the extent Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

/ / /

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF REMOVAL

78.    **WHEREFORE**, Defendant Abbott Vascular Inc. requests that this civil action be removed from the Superior Court of the State of California for the County of Riverside to the United States District Court for the Central District of California – Eastern Division.

DATED:  August 12, 2022                        HUNTON ANDREWS KURTH LLP


                                               By:  /s/ Michele J. Beilke
                                                    Michele J. Beilke
                                                    Julia Y. Trankiem
                                                    JeeHyun Yoon

                                               Attorneys for Defendants
                                               ABBOTT VASCULAR INC. and
                                               ABBOTT LABORATORIES

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

21